IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IVY KNOX, | : | CIVIL ACTION |
| | : | NO. 05-6613 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| JO ANNE BARNHART, | : | |
| Commissioner of | : | |
| Social Security | : | |
| | : | |
| Defendant. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                    February 28, 2007


Plaintiff is a 49 year old high school graduate who worked as a dietary aide until a work-related injury prompted her to stop working in November, 1999.  Before the Court is an appeal by Plaintiff of the Administrative Law Judge's (ALJ) finding that she is not qualified for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB).  Pursuant to the local rule for the handling of appeals of decisions by the Social Security Administration concerning requests for SSI and DIB payments, the parties were required to file cross-motions for summary judgment (doc. no. 7, 8), and the matter was referred to United States Magistrate Judge Timothy Rice for Report and Recommendation.

After an extensive review of the record, Magistrate Judge Rice concluded that while substantial evidence supported the ALJ's determination that Ms. Knox was not disabled, remand

was nevertheless required.  Magistrate Judge Rice believed that
the ALJ's statement that Knox "testified that she was advised by
her attorney in her worker's compensation claim to file for
Social Security benefits . . . raises the specter of filing a
claim only for secondary gain" improperly formed the basis for
the ALJ's decision to partially discount the claimant's
credibility.  As a result, Magistrate Judge Rice concluded that
the ALJ's ultimate decision to deny benefits was tainted.
Although the Court will adopt largely Magistrate Judge Rice's
Report and Recommendation, it disagrees with its ultimate
conclusion that remand is required.

Instead, the Court concludes that the ALJ's statement
concerning Ms. Knox's motives for filing the claim did not form
the basis of her decision to partially discount Knox's
credibility and that the ALJ's decision to partially discount
Knox's credibility is supported by substantial evidence in the
record.  Therefore, the ALJ's ultimate decision to deny benefits
was not tainted.

Accordingly, the Court will adopt in part Magistrate
Judge Rice's Report and Recommendation and Defendant's Motion for
Summary Judgment will be granted.


II.  BACKGROUND

The procedural and factual background of the case was

comprehensively set forth in Magistrate Judge Rice's Report and
is therefore quoted in full below.

A.   Procedural History

Knox applied for DIB and SSI on March 14, 2003,
alleging disability since November 24, 1999 due to asthma, mental
depression, and lumbar and cervical spine herniation.  The state
agency denied her application on August 28, 2003, the ALJ heard
testimony on April 5, 2004, and on April 30, 2004, the ALJ denied
benefits.  The ALJ found Knox's asthma was not "severe" and
consequently did not meet the second step of the sequential test
for determining disability.[1]  She found Knox's physical and

---

[1] These steps are summarized as follows:

1.  If the claimant is working or doing substantial
gainful activity, a finding of not disabled is
directed.  If not, proceed to Step 2. 20 C.F.R. §§
404.1520(b), 416.920(b).

2.  If the claimant is found not to have a severe
impairment which significantly limits his or her
physical or mental ability to do basic work activity, a
finding of not disabled is directed.  If there is a
severe impairment, proceed to Step 3.  20 C.F.R. §§
404.1520(c), 416.920(c).

3.  If the impairment meets or equals criteria for a
listed impairment or impairments in Appendix 1 of
Subpart P of Part 404 of 20 C.F.R., a finding of
disabled is directed.  If not, proceed to Step 4.  20
C.F.R. §§ 404.1520(d), 416.920(d).

4.  If the claimant retains residual functional
capacity to perform past relevant work, a finding of
not disabled is directed.  If it is determined that the

mental impairments were limiting, but not to the extent asserted. She discredited Knox's primary care physician and her treating psychiatrist, while crediting a state examiner and a state psychological consultant.  As a result, the ALJ concluded Knox was unable to return to her past relevant work, but retained the residual functional capacity for light work which exists in significant numbers in the national economy.  (Tr. 31). Consequently, Knox was adjudged as "not disabled" pursuant to 20 C.F.R. §§ 404.1520 and 416.920(f).  On November 3, 2005, the Appeals Council denied Knox's request for review.  This appeal followed.

    B.   <u>Factual History</u>

       Knox injured her back at work in 1999 while lifting an industrial soup container filled with iced tea.  Because of this injury, Knox has not worked since November, 1999. Beginning in November, 1999, she consulted several doctors for the continuing

------

claimant cannot do the kind of work he or she performed in the past, proceed to Step 5.  20 C.F.R. §§ 404.1520(e), 416.920(e).

5.  The Commissioner will then consider the claimant's residual functional capacity, age, education, and past work experience in conjunction with the criteria listed in Appendix 2 to determine if the claimant is or is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).

See also <u>Knepp v. Apfel</u>, 204 F.3d 78, 83-84 (3d Cir. 2000) (citing <u>Santise v. Schweiker</u>, 676 F.2d 925, 926-27 (3d Cir. 1982)).

-4-

treatment of her back problems, which are the basis of her DIB and SSI claims.[2]  Knox was diagnosed with asthma by her primary care physician in 1998, which she claims is a limiting impairment that contributes to her disability.  Since 2003, she also has been treated by Dr. O'Connell Miles, a psychiatrist, due to mental impairments for which she also claims disability.

MRI testing in 2000, 2002, and 2003 revealed Knox suffers from mild to moderate herniations of the cervical spine. A nerve conduction study in July, 2003 also revealed mild abnormalities.  Her most recent MRI, however, revealed disc degeneration resulting in a reduction of canal diameter and narrowing neural foramina[3].  This suggests advancement of her spinal impairment.  Her mental impairments, as diagnosed by Dr. Miles, included a single episode of major depressive disorder and an adjustment disorder, with chronic depressed mood.

Pharmaceutical treatment for Knox's mental and spinal impairments includes Xanax, Paxil, and Alprazolam for anxiety, and Tylenol #4, Lidoderm gel and a Lidocaine patch for pain. Previous medications for her mental and spinal impairments

---

[2] From 1999 to 2003, Knox was examined by the following doctors: Dr. Wayne Gibbons (Tr. 110), Dr. Rhonda Haston (Tr. 111-114), Dr. Andrew Freese (Tr. 115-118), Dr. Judith Peterson (Tr. 132-133), Dr. David Knox (Tr. 134-139), Dr. Sanjay Gupta (Tr. 172-207), and Dr. Yung Doo Song (Tr. 250-277).

[3] The narrowing of the space between two contiguous vertebrae.  Dorland's Illustrated Medical Dictionary 721, 723, 944 (30th ed. 2003) (hereinafter "Dorland's").

included Valium and Zoloft for anxiety, and Percocet for pain. She also has used inhalers for asthma relief.

Knox received physical therapy for two months in 2003, and testified that she is trying to return to the rehabilitation center for additional physical therapy. (Tr. 199-131, 312). Although it has been suggested that Knox is a candidate for back surgery, she has opted to postpone this decision based on the serious risks and on the advice of a neurosurgeon.[4]

II.   DISCUSSION

    A.   <u>Court's Treatment of Reports and Recommendations</u>

        1.   Legal Standard regarding district judge's
           <u>treatment of report and recommendation</u>

District judges have wide discretion on how they choose to treat reports and recommendations from magistrate judges.  <u>See United States v. Raddatz</u>, 447 U.S. 667, 680 (1980).  "Whether or not objections are made to the magistrate's report, under §636(b)(1)(C) the district court 'may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate."  <u>Henderson v. Carlson</u>, 812 F.2d 874, 878 (3d Cir. 1987), <u>cert denied</u>, 484 U.S. 837 (1987).  When objections are filed, the Court must conduct a de novo review of the portions of the Report and Recommendation to which the parties object.  28

---

[4] Rep. & Rec. Nov. 21, 2006 at 2-4.

U.S.C. § 636(b)(1)(C).  See also Thomas v. Arn, 474 U.S. 140, 149 (1985).

Where no objections are filed, as is the case here, a de novo review is not required.  See Henderson, 812 F.2d at 878. Instead, the extent of review is committed to the sound discretion of the district court.  Thomas, 474 U.S. at 154; Goney v. Clark, 749 F.2d 5, 7 (3d Cir. 1984).  The Court is free to conduct a de novo review,[5] should it choose, or give any consideration to the magistrate's report that the court considers appropriate.  Thomas, 474 U.S. at 150.

    2.    The Court will adopt in part the Report and
        Recommendation.

The Court agrees with the sound reasoning of the Report

_____

[5] By Order of December 14, 2006, the Court scheduled a hearing on Magistrate Judge Rice's Report and Recommendation on December 21, 2006, and advised the parties to be prepared to discuss whether Magistrate Judge Rice's finding that the ALJ's adverse inference of Knox's improper motive for seeking SSI and DIB benefits "tainted the ALJ's view of this case, and undermined the ALJ's adverse finding of Knox's credibility" was legally and factually correct.

At the hearing on December 21, 2006, the parties were given an opportunity to discuss the Report and Recommendation, as well as the merits outlined in their motions for summary judgment. Counsel for both Plaintiff and Defendant agreed that the Court was free to adopt in full the Report and Recommendation, reject the Report and Recommendation and conclude that the ALJ's decision was supported by substantial evidence in the record, or reject the Report and Recommendation and conclude the ALJ's denial of benefits was not based on substantial evidence.

and Recommendation with respect to the ALJ's conclusion that
Knox's asthma was a non-severe impairment and that the ALJ's
failure to consider the combined effect of Knox's asthma and
spinal impairments on her ability to engage in gainful employment
was a harmless error.  Because objections were not filed to this,
or any portion of the Report and Recommendation, the Court will
not conduct a de novo review of this portion of the Report and
Recommendation, and will adopt the Report and Recommendation with
respect to this issue.

      B.    De Novo Review of ALJ's Decision of Knox's Residual
           Functional Capacity

      Although not required, the Court is permitted to
conduct a de novo review of any portion of the Report and
Recommendation.  <u>Thomas</u>, 474 U.S. at 150.  The Court will choose
to do so with respect to the Report and Recommendation's
conclusion that remand is required due to the ALJ's reference to
Ms. Knox's motive for filing.

         After careful review of the record, the Court believes
that, notwithstanding the ALJ's statement regarding Ms. Knox's
motives for filing, substantial evidence supported the ALJ's
decisions to partially discount Ms. Knox's credibility and to
decline to afford her treating physicians' opinions controlling
weight.  Because substantial evidence supports the ALJ's

-8-

decisions, the remand is not warranted in this case.

       1.   Legal Standard when reviewing ALJ determinations

       While the Court may conduct a de novo review of the Magistrate Judge's Report and Recommendation, it does not conduct a de novo review of the ALJ's determination to deny benefits. Hunter Douglas, Inc. v. NLRB, 804 F.2d 808, 812 (3d Cir. 1986). Rather, on appeal of a denial of Social Security benefits, the Court merely ensures that the ALJ's decision is supported by substantial evidence in the record.  Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005); Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994).  "Substantial evidence" is that which "a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 407 (1971); Jesurum v. Secretary of the United States Dep't of Health & Human Servs., 48 F.3d 114, 117 (3d Cir. 1995).  Such evidence may be less than a preponderance, Richardson, 402 U.S. at 401; Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979), but "must be sufficient to support the conclusion of a reasonable person after considering the evidentiary record as a whole, not just the evidence that is consistent with the agency's findings." Monsour Medical Center v. Heckler, 806 F.2d 1185, 1190-91 (3d Cir. 1986) (quoting R. Pierce, S. Shapiro & P. Verkuil, Administrative Law and Process 358-59 (1985)).  If the ALJ's

findings of fact are supported by substantial evidence, the Court is bound by those findings.  <u>Fargnoli v. Massanari</u>, 247 F.3d 34, 38 (3d Cir. 2001).

        2.    Application:  Does the ALJ's Reference to Knox's Motives for Filing Justify Remand?

Magistrate Judge Rice based his decision to recommend remand on a belief that the ALJ's entire process was tainted by erroneously alluding that Ms. Knox had an improper motive for filing for SSI and DIB.  Specifically, Magistrate Judge Rice was troubled by the ALJ's statement that Knox "testified that she was advised by her attorney in her worker's compensation claim to file for Social Security benefits," which "raises the specter of filing a claim only for secondary gain." (Tr. 28).

Despite this statement, the record does not reflect that the ALJ's decision to partially discount Ms. Knox's credibility was premised upon a belief that Ms. Knox had an improper motive for filing.  Viewed in context, the statement in question does not appear to be a factual finding by the ALJ, but rather is more in the nature of a mere casual remark. Furthermore, substantial evidence supports both the ALJ's decision to partially discredit Knox's credibility as well as her decision to decline to afford Knox's treating physicians controlling weight when determining Ms. Knox's residual

functional capacity.  Therefore, remand is not warranted in this case.

        a.    Substantial evidence supports the ALJ's decision to partially discredit Knox's credibility.

       The ALJ must seriously consider subjective complaints which may support a claim for benefits, especially when the complaints are supported by medical evidence.  Smith v. Califano, 637 F.2d 968, 972 (3d Cir. 1981); Taybron v. Harris, 667 F.2d 412 (3d Cir. 1981).  In order to be considered, however, the subjective complaint must bear some relationship to the claimant's physical status, as demonstrated by objective medical findings, diagnoses and opinion.  20 C.F.R. §§ 404.1526-29.  In addition, because of her ability to observe the claimant's demeanor, an ALJ's credibility finding is entitled to deference and should not be discarded lightly.  See Reefer v. Barnhart, 326 F.3d 376, 380 (3d Cir. 2003).  While the ALJ did consider Knox's subjective complaints, when focusing on the intensity and persistence of the symptoms and the extent to which they affected Knox's ability to work, the ALJ concluded that they were not totally credible.  Because the extent of Ms. Knox's pain expressed in her subjective complaints were unsupported by medical evidence and inconsistent with Ms. Knox's own account of

-11-

the activities which she performs, this determination is
supported by substantial evidence in the record.

The ALJ concluded that Ms. Knox did have physical and
mental impairments capable of causing the type of symptoms she
alleged.  However, when the ALJ considered the intensity and
persistence of the symptoms and the extent to which they affected
her ability, the ALJ discounted Ms. Knox's subjective complaints.
In doing so, the ALJ determined that Ms. Knox's complaints of
totally disabling physical and/or mental limitations were only
partially credible as they were inconsistent with the weight of
objective medical evidence,[6] the findings of Dr. Knox, Ms. Knox's
own account of her activities,[7] Ms. Knox's conservative course of

---

[6] One example of this inconsistent objective medical
evidence was the only mildly abnormal NCV/EMG study in 2003.

[7] On a questionnaire completed around the time she applied
for benefits in this case, Ms. Knox reported that conducted a
wide range of activities, including: shopping, laundry, taking
out small bags of trash, carrying one bag of groceries,
performing some housecleaning, preparing microwave meals,
vacuuming, climbing twenty steps to enter her apartment.  In
addition, she claimed she was able to tie her shoes, fasten
buttons and snaps on clothing, use a TV remote control, touch
tone telephone, and knife and fork.  She stated that she was able
to sit for twenty to twenty-five minutes before needing to change
position, spoke on the phone with friends and family, planned her
days, made her own decisions, did not have difficulty going out
in public, got along with people in authority, responded "ok" to
criticism, took medication which eased her alleged pain "a
little," without any side effects, did not need help taking her
medications, and did not need special help to care for her
personal needs (Tr. 92-97, 100).

In early 2003, Ms. Knox informed her physical therapist that she
took public transportation and was able to dress and bathe

mental health treatment, and Ms. Knox's own statements to Dr.
Gupta that her back pain was "much better."  (Tr. 28, 134-37,
140-45, 160-170, 172, 208-236, 239, 241-49, 321).  These reasons
provide substantial evidence for the ALJ's determination to
partially discount Ms. Knox's credibility.

> b.  Substantial evidence supports the ALJ's
> finding that Knox's treating physicians'
> opinions were not entitled to controlling
> weight.

When supported by medically acceptable clinical and
laboratory diagnostic techniques and consistent with other
substantial evidence in the record, a treating physician's
opinion is entitled to controlling weight.  20 C.F.R. §§

herself, groom her hair, and perform light and moderate household
chores (Tr. 128).

In August 2003, Ms. Knox told Dr. Miles and her therapist
that she babysat for her goddaughter's daughter and was chosen to
speak on a "women's panel" (Tr. 219, 245).

At the administrative hearing, Ms. Knox testified that she
did light housework and laundry, prepared meals, shopped for
groceries, provided care for her son (who had special needs and
lived in a residential group facility since 2001) when he stayed
with her overnight at her home several times per month,
interacted with her friends, enjoyed reading, studied the Bible,
attended church, belonged to a church group that met every
Wednesday, maintained a current driver's license, took public
transportation unaccompanied to attend the hearing, and enrolled
in two classes for spring semester 2004 at Philadelphia Community
College, but had problems with attendance (Tr. 305-06, 314-17,
324-26).

-13-

404.1527(d)(2).  If the treating physician's assessment conflicts with other medical evidence, however, then the ALJ is free to reject the treating physician's opinion, so long as the ALJ clearly explains her reasons for rejecting the assessment and makes a clear record of her decision.  Jones v. Sullivan, 954 F.2d 125, 129 (3d Cir. 1991); Rivera v. Barnhart, 2005 WL 713347 at *5 (E.D. Pa. March 24, 2005) (Giles, J.).

      In this case, four of Ms. Knox's treating physicians offered opinions in this case: Dr. Miles, Dr. Young Doo Song, Dr. Freese and Dr. Gibbons.  The ALJ properly concluded that all four physicians' opinions were not entitled to controlling weight in this case.

      Dr. Miles was Knox's treating psychiatrist and completed a medical source statement for this case.  He concluded that Ms. Knox had no useful ability to deal with work stresses, to behave in an emotionally stable manner, to demonstrate reliability and to relate predictably in social situations.  The ALJ concluded that this opinion, however, should not be afforded controlling weight for several reasons.  First, the opinion was inconsistent with the results of Dr. Mile's only mental status examination of Ms. Knox.  Second, it was not well-supported by Dr. Miles's own treatment records or the notes of Ms. Knox's mental health therapies.  Third, the opinion was generally inconsistent with Ms. Knox's self-reported activities.

-14-

Similarly, the ALJ decided that the opinion of Ms. Knox's primary care physician, Dr. Young Doo Song, was not entitled to controlling weight.  Dr. Song opined that Ms. Knox was unable to sit and stand/walk for even four hours in a workday, would need to take unscheduled breaks every thirty minutes and keep her legs elevated 40% to 50% of the time during a workday, and would likely be absent from work more than three times each month due to her impairments (Tr. 274-77).  However, this opinion was not supported by the weight of objective medical evidence, such as the neurological evidence of Dr. Freese.  In addition, it was inconsistent with Ms. Knox's treatment regiment, which consisted of outpatient care and lacked significant ongoing treatment or medication at the time of the hearing.  Furthermore, Dr. Song's opinion was contradicted by the lengthy range of activities that Ms. Knox herself claimed to perform on a daily basis.  Finally, Dr. Song's opinion was contradicted by the residual functional capacity assessment performed by the state consultant physician, Dr. Knox.

Dr. Freese's opinions, reflected in a Pennsylvania Department of Public Welfare check-the-box form, were also denied controlling weight by the ALJ.  On the form, Dr. Freese checked "temporarily disabled" due to "severe neck and left arm pain since 1999".  This was given little weight for two main reasons.  First, it was unsupported by Dr. Freese's own findings when

examining Ms. Knox in October 2002, which showed that she had grossly intact muscle tone in all extremities, only mild diffuse weakness in the left upper extremity, normal strength in her lower extremities, only minimal decreased sensation in the left arm and grossly intact reflexes in the upper extremities. Second, check-the-box forms are typically considered "weak evidence at best." Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993).

Finally, the ALJ declined to afford controlling weight to the opinion of Dr. Gibbons, an American Medical Group physician, who, like Dr. Freese, had completed a Pennsylvania Department of Public Welfare check-the-box form claiming that Ms. Knox was "temporarily disabled". The form was unaccompanied by any report or explanation. This, in itself, calls into question its reliability. See id. (stating that when so-called "reports are unaccompanied by thorough written reports, their reliability is suspect . . . ." and quoting Brewster v. Heckler, 786 F.2d 581, 585 (3d Cir. 1986)). Moreover, the report was inconsistent with the objective medical evidence, such as the EMG/NCV study of Ms. Knox's left upper and lower extremities in 2003, which indicated only "very mild" L5 radiculopathy on the left, with no evidence of carpal tunnel syndrome, peripheral polyneuropathy, or lower brachial plexopathy. (Tr. 140-45).

III. CONCLUSION

The Court will adopt in part Magistrate Judge Rice's Report and Recommendation in this case.  The Report and Recommendation will be adopted to the extent that it concludes that the ALJ's determination that Knox's asthma was a non-severe impairment was based on substantial evidence in the record and the ALJ's failure to consider the combined effect of Knox's asthma and spinal impairments on her ability to engage in gainful employment was a harmless error.

The Court will reject the portion of the Report and Recommendation that calls for remand.  After conducting a de novo review on this portion of the Report and Recommendation, it appears that the ALJ's statement concerning Knox's motives for filing was merely a casual remark and not a finding that formed the basis for her decision to partially discount Ms. Knox's credibility.  Instead, the ALJ's determination to partially discount Ms. Knox's credibility was properly supported by substantial evidence in the record.  Therefore, the ALJ's ultimate decision to deny Knox's request for SSI and DIB payments was not tainted.

Because the Court is bound by the ALJ's findings of fact if those findings are supported by substantial evidence, the ALJ's determination that Ms. Knox does not qualify for SSI and DIB benefits stands.  Accordingly, Plaintiff's motion for summary

-17-

judgment will be denied, and Defendant's motion for summary

judgment will be granted.

An appropriate order follows.